UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

NICHOLAS STEVEN SMITH,       )
                             )
        Petitioner,          )
                             )   No.  4:04CV00074 RWS
                             )                   (FRB)
                             )
v.                           )
                             )
                             )
MICHAEL BOWERSOX,            )
                             )
        Respondent.          )

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Presently before this Court is the pro se petition of Missouri State prisoner Nicholas Steven Smith ("petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) All pretrial matters have been referred to the undersigned United States Magistrate Judge for appropriate disposition pursuant to 28 U.S.C. § 636(b).

On July 12, 2000, a jury in St. Louis County, Missouri convicted petitioner of assault in the first degree, armed criminal action, and felonious restraint in connection with an incident which occurred on the night of October 8, 1999, involving Ms. Delisa Wimbley. (Resp. Exh. A at 579.)[1] On September 15, 2000,

---

[1] Petitioner also stood trial on the charges of attempted rape, assault in the second degree, an additional count of armed criminal action, and stealing a motor vehicle. (Resp. Exh. B at 70-75.) Petitioner was acquitted of these charges. Id.

the Honorable John F. Kintz sentenced petitioner as a prior and persistent offender to two concurrent twenty-year terms of imprisonment for the offenses of first degree assault and armed criminal action, and a concurrent term of ten years for felonious restraint. (Resp. Exh. A at 583.) Petitioner is presently incarcerated in the South Central Correctional Center in Licking, Missouri.

Petitioner filed a timely appeal with the Missouri Court of Appeals, alleging only that the trial court erred when it sustained the prosecuting attorney's objection to a portion of defense counsel's closing argument in which counsel was arguing to the jury that petitioner's state of mind at the time of his attack upon Ms. Wimbley was inconsistent with a finding of assault in the first degree. (Resp. Exh. C.) On August 14, 2001, the court affirmed petitioner's conviction and sentence. (Resp. Exh. E); State v. Smith, 52 S.W.3d 643 (Mo. Ct. App. 2001) (per curiam). On October 23, 2000, petitioner filed a premature pro se post-conviction motion pursuant to Missouri Supreme Court Rule 29.15. (Resp. Exh. F at 3-8.) On December 19, 2000, appointed counsel entered his appearance on petitioner's behalf, and on December 27, 2000, filed a motion to hold petitioner's premature filing open pending conclusion of his direct appeal.[2] (Resp. Exh. F at 11-14.)

---

[2]The record does not contain a copy of the court's order granting this motion. In his amended post-conviction motion, however, petitioner indicates that the court granted the motion on January 2, 2001. (Resp. Exh. F at 17.) Respondent does not dispute the timeliness or validity of petitioner's post-

Petitioner filed his amended post-conviction motion and request for evidentiary hearing on December 6, 2001. (Resp. Exh. F at 15-39.) Therein, petitioner alleged as follows: (1) trial counsel was ineffective for failing to tender to the court an instruction defining "physical injury"; (2) trial counsel was ineffective for failing to object to the admission of Ms. Wimbley's medical records because those records contained statements identifying petitioner as the perpetrator; (3) trial counsel was ineffective for failing to object when the prosecutor disparaged petitioner's defense and told the jury that the state had a strong case; and (4) appellate counsel was ineffective for failing to raise on appeal a claim that state's witness Dr. Marshall, the emergency room physician who treated Ms. Wimbley, was not qualified to offer an expert opinion regarding whether Ms. Wimbley's injuries could have been inflicted by a shovel. (Resp. Exh. F at 15-36.) On March 29, 2002, the court denied petitioner's motion. (Resp. Exh. F at 51-59.)

Petitioner filed a timely appeal with the Missouri Court of Appeals, in which he advanced all of the points from his amended post-conviction motion. (Resp. Exh. F at 60-61; Resp. Exh. G.) The Missouri Court of Appeals affirmed on April 1, 2003. (Resp. Exh. I); <u>Smith v. State</u>, 101 S.W.3d 349 (Mo. Ct. App. 2003) (<u>per curiam</u>).

Petitioner filed the instant petition for a writ of

conviction motion.

habeas corpus in this Court on January 20, 2004. (Docket No. 1-1.)

The grounds for relief set out in the petition filed in this cause

are as follows:

> 1.   In 2915 submitted by Movant 31, Oct, 2001
> Movant would like submit all accept Pg 17, 10,
> Line 1 thru 10, Pg 18, Lines 1 thru 5 That did
> not happen. . . . Ms Wimbley lied.  The mans
> name was Mike, and he talked, just talked to
> Ms Wimbley about buying crack cocaine.  There
> was not hugging or arguement.
> Plus 12,i 12,f 12,h (12,f) [sic]
>
> 2.   The Public defender never brought up the
> fact that Ms Wimbley sustained her injury
> jumping out of a moving
> Ms Wimbley jumped out of a moving vehicle 3 or
> 4 times.  The defense acted like it never
> happened.  I was there, I saw it, I couldn't
> believe it, if I hadn't witnessed it.  She cut
> herself the first time.  Saw her own blood,
> got hysterical and jumped out repeatedly.  I
> was taking her for help.  At 20 to 25 miles an
> hour speed.  Ms. Wimbley had my Son. (12f)
> [sic]
>
> 3.   The alleged weapon had neither finger
> prints or blood on them. (12,f) (12i) 11/4/02
> The state had no physical evidence on it's
> alleged weapon.  Yet the court let the
> prosecutor present it like it was the golden
> Rule Instead of what it was, lost and found
> trash.  On 11/4/02 Movant had a stroke from
> denial of medication and treatment [sic]
>
> 4.   Ms. Chazen's Motion for Judgement of
> Acquittal, or in the Alternative, Motion for
> new Trial.  Aug 14, 2000
> I submit all of this motion accept Paragraph
> or section 24.  Delete this section, it did
> not happen.  Ms Chazen is wrong.  I did not
> give her any information concerning one word
> of this statement (12,f) (12i) See Attached
> [sic]

(Docket No. 1-1 at 4-5.)

On January 29, 2004, petitioner filed a supplemental petition in which he raised seven additional grounds for relief, and specifically,

> 5.   Ms. Wimbley injured herself by jumping out of a moving car;
>
> 6.   Post-conviction counsel violated petitioner's right to due process by failing to raise points on appeal and failing to file a motion for rehearing and/or transfer;
>
> 7.   Juror number two (Ms. Homeyer) visited petitioner's mother at her home and inquired regarding petitioner, and then perjured herself during voir dire by claiming to know nothing about petitioner;
>
> 8.   Trial counsel conspired against petitioner's fiduciary interest; failed to respect petitioner's not guilty plea; and failed to accept petitioner's contention that Ms. Wimbley jumped out of a moving motor vehicle three or four times;
>
> 9.   All African-Americans and "decent law abiding citizens" were eliminated from petitioner's jury panel;
>
> 10.   Jail guards tried to kill petitioner during his stay at the Justice Center in Clayton, Missouri; and
>
> 11.   Petitioner received ineffective assistance of direct appeal counsel because counsel failed to present "proper" points and issues on appeal.
>
> (Docket No. 4.)

Respondent contends that the claim raised in Ground 5 should be denied because it is not cognizable in these proceedings, and also because it was not raised on direct appeal. Respondent also argues that Ground 6 is not cognizable in these proceedings

and should be denied.  Respondent further contends that the claims raised in Grounds 1, 2, 3, 7, 8, 9, 10, and 11 are procedurally barred from review because petitioner failed to properly raise them in state court.  Finally, respondent argues that, to the extent that the claim raised in Ground 4 alleges a claim of trial court error which was fairly presented to the state court on direct appeal, such claim is without merit and should be denied.

## I.  Non-Cognizable Claims

In Ground 5, petitioner alleges that Ms. Wimbley injured herself by jumping out of a moving vehicle.  In Ground 6, petitioner alleges that his post-conviction attorney violated petitioner's right to due process by failing to raise points on appeal and failing to file a motion for rehearing and/or transfer.

Federal habeas relief is available to a state prisoner only on the ground that he is imprisoned in violation of a constitutional or federal statutory right.  28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).  Claims that do not reach "constitutional magnitude" cannot be addressed in a petition for writ of habeas corpus.  Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991).  "[F]ederal habeas courts sit to ensure that people are not imprisoned in violation of the Constitution-not to correct errors of fact."  Herrera v. Collins, 506 U.S. 390, 400 (1993).

Petitioner's claim in Ground 5, that Ms. Wimbley injured

herself by jumping from a moving car, is not a claim of constitutional magnitude. Petitioner merely attempts to correct what he views to be an error of fact, and does not attempt to demonstrate that he is in custody in violation of the constitution, laws or treaties of the United States. Petitioner's claim in Ground 5 is therefore not cognizable in these proceedings. <u>See</u> 28 U.S.C. § 2254(a); <u>Herrera</u>, 506 U.S. at 400; <u>Williams-Bey</u>, 894 F.2d at 317; <u>Carter</u>, 929 F.2d at 1296.[3]

In Ground 6, petitioner claims entitlement to habeas relief due to errors on the part of his post-conviction counsel. It is well-established that claims of error on the part of post-conviction counsel are not cognizable in federal habeas corpus, because there is no constitutional right to the effective assistance of post-conviction counsel. 28 U.S.C. § 2254(i); <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991) (Because there is no constitutional right to an attorney in state post-conviction proceedings, a petitioner cannot claim ineffective assistance of counsel in such proceedings); <u>Jolly v. Gammon</u>, 28 F.3d 51, 54 (8th Cir. 1994); <u>Nolan v. Armontrout</u>, 973 F.2d 615, 617 (8th Cir. 1992). Furthermore, to the extent that petitioner's Ground 6 can be read as an attack on his post-conviction proceedings in general, such

_____

[3]Furthermore, even if petitioner's Ground 5 could be read as stating a cognizable claim, it would be procedurally defaulted because petitioner did not raise it on direct appeal. <u>Jolly v. Gammon</u>, 28 F.3d 51, 53 (8th Cir. 1994). The undersigned will, however, address the issue raised by Ground 5 to the extent it can be read as an assertion of actual innocence.

claims are also not cognizable. Relief under § 2254 is available for violations of federal law which either lead to a criminal conviction in state court or occur on direct appeal from a conviction, but not for violations which occur on collateral review. Williams-Bey, 894 F.2d at 317 (infirmities in a state post-conviction proceeding do not raise constitutional issues cognizable in a federal habeas proceeding).

Therefore, for the foregoing reasons, petitioner's claims in Grounds 5 and 6 are not cognizable in this § 2254 proceeding and should be denied.

## II. Cognizable Claims

The remainder of petitioner's grounds for relief appear to allege claims of constitutional magnitude, and can therefore be addressed by this Court. See Carter, 929 F.2d at 1296.

A.  Exhaustion Analysis

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied if a petitioner has either fairly presented his claims first in state court, or if there are no currently available non-futile state remedies. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). The court must first examine whether the constitutional dimensions of petitioner's claims have been fairly

presented to the state court. Id. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Id. If a petitioner satisfies the exhaustion requirement in this manner, the federal court still may not reach the merits of the petitioner's claim unless the petitioner: (1) demonstrates adequate cause to excuse his state court default, **and** actual prejudice resulting from the alleged unconstitutional error; or (2) that a fundamental miscarriage of justice would occur in the absence of federal review. Coleman, 501 U.S. at 750.

A review of the record shows petitioner's remaining claims for relief to be exhausted inasmuch as petitioner either properly raised the claims in state court, or currently has no available non-futile state remedy by which he could now pursue his claims.

### III. Procedural Bar

In Grounds 3, 7, 9, and 10, petitioner raises various claims related to the sufficiency of the evidence, juror misconduct and an apparent Batson[4] challenge, and denial of due process. A review of the record shows that petitioner did not raise any of these claims on direct appeal. (Resp. Exh. C, "Appellant's Statement, Brief and Argument," submitted to the Missouri Court of

---

[4]Batson v. Kentucky, 476 U.S. 79 (1986).

Appeals in appeal number 78488.) In Grounds 2, 8 and 11, petitioner raises various claims related to ineffective assistance of trial counsel and direct appeal counsel. A review of the record shows that petitioner did not raise any of these claims to the Missouri court of appeals following the denial of his post-conviction motion. (Resp. Exh. G, "Appellant's Statement, Brief and Argument," submitted to the Missouri Court of Appeals in appeal number 81197.) Furthermore, the factual grounds petitioner asserts in Ground 1 were never raised in any proceeding in state court.[5] Finally, in Ground 4, petitioner raises several claims related to trial court error, only one of which was raised on direct appeal.[6] (Resp. Exh. C, "Appellant's Statement, Brief and Argument," submitted to the Missouri Court of Appeals in appeal number 78488.)

To avoid procedural default, a claim must be presented at each step of the judicial process in state court. Jolly, 28 F.3d at 53 (citing Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). Failure to present a claim on appeal from the denial of post-conviction relief constitutes a procedural default. Clay v. Bowersox, 367 F.3d 993, 1005-06 (8th Cir. 2004); Reese v. Delo, 93

---

[5]Specifically, petitioner argues "[t]hat did not happen. . . . Ms Wimbley lied. The mans name was Mike, and he talked, just talked to Ms Wimbley about buying crack cocaine. There was not hugging or arguement." [sic] (Docket No. 1-1 at page 4.)

[6]Petitioner's sole point on direct appeal was that the trial court erred when it sustained the prosecutor's objection to defense counsel's statement during closing argument that petitioner "went into a rage" when he hit Ms. Wimbley with a shovel. Petitioner argued that sustaining the objection essentially communicated to the jury that petitioner's sole defense was unfounded.

F.3d 1177, 1181 (8th Cir. 1996) (holding that failure to raise claim in post-conviction appeal is considered abandonment of claim). The federal court is precluded from substantively considering any claim that a petitioner has failed to "fairly present" to the state court. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003). A claim has been "fairly presented" when a petitioner has properly raised the "same factual grounds and legal theories" in the state courts. Id. (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). "Even if the factual foundation underlying the federal habeas claim parallels the petitioner's allegations in state court, the fairly presented requirement is not satisfied unless the petitioner presented the same federal legal theories in state court that he is raising in federal court." Wyldes v. Hundley, 69 F.3d 247, 252 (8th Cir. 1995).

A review of the record shows that petitioner failed to raise any of the claims he now asserts in Grounds 3, 7, 9 and 10 to the Missouri courts on direct appeal. The record further reveals that petitioner failed to raise any of the claims he now asserts in Grounds 2, 8 and 11 on appeal from the denial of his post-conviction motion. Because petitioner failed to properly raise the claims in Grounds 2, 3, 7, 8, 9, 10 and 11 on either direct appeal or on appeal from the denial of his post-conviction motion, those claims are procedurally defaulted, and should therefore be denied. Jolly, 28 F.3d at 53; Clay, 367 F.3d at 1005-06; Reese, 93 F.3d at 1181.

Furthermore, with regard to Ground 1, the undersigned has reviewed the entire record, including petitioner's <u>pro</u> <u>se</u> post-conviction motion, his amended post-conviction motion, the appeal from the denial of petitioner's post-conviction motion, as well as petitioner's direct appeal, and has found the record void of any instance in which petitioner presented those same factual contentions or circumstances to the Missouri state court at any time during petitioner's appeals process. Because petitioner did not raise the "same factual grounds and legal theories" in the state courts as he raises here, his claim in Ground 1 was not "fairly presented", is therefore procedurally barred from review, and should be denied. <u>See</u> <u>Wemark</u>, 322 F.3d at 1020-21; <u>Wyldes</u>, 69 F.3d at 252.

Finally, regarding Ground 4, petitioner incorporates into the instant petition his entire Motion for Judgment of Acquittal/Motion for New Trial ("Motion for New Trial"), in which he raised several claims of trial court error. However, any claims of trial court error that petitioner did not raise in his direct appeal are procedurally defaulted. <u>See</u> <u>Jolly</u>, 28 F.3d at 53.

A review of the record reveals that, in his Motion for New Trial, petitioner claimed that the trial court erred when it: (1) overruled the defense motion for judgment of acquittal at the close of the state's evidence; (2) overruled defendant's request for a continuance due to late witness endorsements; (3) overruled defendant's objection to the state filing an amended information

changing the time that the alleged incident occurred; (4) sustained the state's motion in limine regarding the fact that defendant had questioned the victim regarding her child's paternity; (5) overruled defendant's motion in limine and objections during trial by allowing the state to introduce at trial evidence that the victim had stated "he was going to kill me;" (6) overruled the defendant's objection to the state asking venire persons during voir dire whether they could return a guilty verdict if they believed eyewitness testimony; (7) overruled the defendant's objection to the state asking venire persons during voir dire whether they believed that a rape could occur between two people who had previously had consensual sex; (8) overruled the defendant's objection to the state's comment to the venire panel that if defendant puts on witnesses, they are to be held to the same standard as those of the state; (9) sustained the state's objection to the defendant asking the venire panel questions regarding their beliefs concerning a defendant's right not to testify; (10) allowed the state to strike five African-American venire persons; (11) overruled defendant's objection when the prosecutor, during opening statement, recited facts concerning forcible rape while pointing at defendant; (12) sustained the state's objection to defendant questioning a witness whether the victim had had sexual relations with a Mr. Keith Thomas; (13) overruled defendant's objections to Dr. Marshall's testimony that the victim's injuries could have been caused by a shovel; (14)

sustained the state's objection to the defendant's questioning the complaining witness whether she and the defendant had ever planned to marry; (15) allowed into evidence all photographs of the victims' face; (16) overruled the defendant's objection to the state's comments on defendant's opening statement; (17) overruled the defendant's objection to the state's characterization of the wounds on the victim's arm as "defensive;" (18) sustained the state's objection to defendant's statement that the victim did not tell the emergency room physician that her pants had been torn off; (19) sustained the state's objection to defendant's statement during closing argument that defendant had gone "into a rage" when he hit the victim on the head with a shovel; and (20) sustained the state's motion in limine prior to closing argument that defendant be precluded from arguing the absence of blood on the shovel. (Resp. Exh. B at 77-87.)

Further review of the record reveals that petitioner's sole point on direct appeal was that the trial court erred when it sustained the prosecutor's objection to defense counsel's closing argument regarding petitioner's state of mind during the attack. (Resp. Exh. C, "Appellant's Statement, Brief and Argument," submitted to the Missouri Court of Appeals in Appeal number 78488.) Specifically, the trial court sustained the prosecutor's objection to a portion of defense counsel's closing argument in which she argued to the jury that petitioner "went into a rage" when he struck the victim on the head with a shovel, and therefore could

not have formed the intent necessary for the jury to find him guilty of assault in the first degree. To the extent petitioner in Ground 4 attempts to raise any claims of trial court error other than that which he raised on direct appeal, such claims are procedurally barred from review and should be denied. See Jolly, 28 F.3d at 53.

A.   Cause and Prejudice

        Due to the procedurally defaulted nature of petitioner's claims in Ground 4 other than the one presented on direct appeal, this Court cannot reach the merits of the claims absent a showing of cause and prejudice, or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. "Establishing cause requires a showing of some external impediment that frustrates a prisoner's ability to comply with the state procedural rules." Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir. 1998). Examples of such cause include a showing that a factual or legal basis for a claim was not reasonably available to counsel, or that some external interference thwarted petitioner's attempts to comply with state procedural rules. Murray v. Carrier, 477 U.S. 478, 488 (1986).

        Petitioner herein makes no attempt to establish cause to excuse his procedural default. Where a petitioner cannot show cause for his procedural default, the court need not consider whether prejudice has been shown. Tokar v. Bowersox, 198 F.3d 1039, 1052 (8th Cir. 1999); Sherron v. Norris, 69 F.3d 285, 289

(8th Cir. 1995).

B.    <u>Fundamental Miscarriage of Justice</u>

        Petitioner does, however, allege the "fundamental
miscarriage of justice" exception to the procedural default
doctrine by asserting that he did not attack Ms. Wimbley.  In
Ground 5, petitioner alleges that Ms. Wimbley sustained her
injuries when she jumped from a moving vehicle, thereby alleging
that Ms. Wimbley's actions, not petitioner's, caused her injuries.
Second, in Ground 4, petitioner states that he excludes "paragraph
24" of his Motion for New Trial, specifically stating: "Delete this
section, it did not happen.  Ms. Chazen is wrong.  I did not give
her any information concerning one word of this statement."
(Docket No. 1-1, page 5, ¶ 12D.)  Paragraph 24 of petitioner's
Motion for New Trial discusses defense counsel's closing argument
in which she explains petitioner's state of mind during his attack
upon Ms. Wimbley, which petitioner is alleging did not happen.
(Resp. Exh. B at 86.)  Both of petitioner's attempts to invoke the
"fundamental miscarriage of justice" exception by asserting claims
of actual innocence fail.

        To raise the fundamental miscarriage of justice exception
to the procedural default doctrine, petitioner must "present new
evidence that affirmatively demonstrates that he is innocent of the
crime for which he was convicted."  <u>Abdi v. Hatch</u>, 450 F.3d 334,
338 (8th Cir. 2006); <u>see also</u> <u>Brownlow v. Groose</u>, 66 F.3d 997, 999
(8th Cir. 1995).  "[A] claim of 'actual innocence' is . . . a

gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Mansfield v. Dormire, 202 F.3d 1018, 1024 (8th Cir. 2000). To successfully pursue a claim of actual innocence, petitioner must show (1) new reliable evidence not available at trial; and (2) that, more likely than not, no reasonable juror would have convicted petitioner in light of the new evidence. Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

Here, petitioner offers another explanation for Ms. Wimbley's injuries by arguing that she injured herself by jumping from a moving vehicle three or four times, occurrences petitioner personally witnessed. Petitioner cannot satisfy the first prong of the actual innocence test because this evidence is not "new, reliable evidence" of actual innocence. This evidence is not new because it was available to petitioner at the time of his trial. Furthermore, petitioner has done nothing to demonstrate to this Court that his account of Ms. Wimbley's actions on the night in question is reliable. Petitioner's argument therefore "falls far short of the showing of actual innocence that is required to meet the miscarriage-of-justice exception." Sweet v. Delo, 125 F.3d 1144, 1151-52 (8th Cir. 1997); see also Schlup v. Delo, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.")

Similarly, petitioner's express omission of paragraph 24 and his statement that "it did not happen" is merely a bald assertion of innocence, with no facts offered in support. As such, it is insufficient to establish a colorable claim of actual innocence. Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (en banc) (bare, conclusory assertion that a petitioner is actually innocent is insufficient to excuse a procedural default); Schlup, 513 U.S. at 315 (To demonstrate a fundamental miscarriage of justice, a prisoner must allege facts that show actual innocence).

Because petitioner has failed to present new, reliable evidence of actual innocence, he cannot satisfy the "fundamental miscarriage of justice" exception to showing cause and prejudice. Schlup, 513 U.S. at 314-15; Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995); see also McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997).

Because petitioner has failed to establish cause to excuse his procedural default, and because he is unable to invoke the "fundamental miscarriage of justice" exception to the procedural default doctrine, the claims raised in Grounds 1, 2, 3, 7, 8, 9, 10 and 11, and any claims of trial court error raised in Ground 4 other than the trial court's alleged error in sustaining the prosecution's objection to defense counsel's closing argument, are procedurally barred from review and should be dismissed without consideration of their merits. See Maynard, 981 F.2d 981.

## IV. Claims Addressed on the Merits

A. <u>Trial Court Error</u>

In Ground 4 of the instant petition, petitioner incorporates his entire Motion for New Trial, in which he alleges several claims of trial court error, into the instant petition. However, as discussed, <u>supra</u>, the only claim that petitioner presented on direct appeal was that the trial court erred when it sustained the prosecutor's objection to defense counsel's argument that petitioner's state of mind during his attack upon Ms. Wimbley was inconsistent with a finding of assault in the first degree. On August 14, 2001, the Missouri Court of Appeals denied petitioner relief. <u>Smith</u>, 52 S.W.3d 643.

In rejecting petitioner's claim, the Missouri Court of Appeals summarized the facts adduced at trial and noted as follows in its <u>Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b)</u>, (Resp. Exh. E):

> The evidence adduced at trial was as follows. Defendant and Delisa Wimbley ("Victim") dated for several months beginning around May 9, 1999 and ending around September of 1999. After they ceased dating, they maintained a friendship and an occasional sexual relationship. On the evening of October 8, 1999, they went out together. While out, Defendant got upset about Victim's interactions with two other men. The first interaction involved Keith Thomas, one of Victim's old boyfriends. While Defendant and Victim were drinking and talking with Thomas and his girlfriend, Thomas repeatedly flirted with Victim by stroking her legs. Defendant accused Victim of disrespecting him. He also

yelled at her and pulled her hair.

The second interaction involved a man named Abby. While Victim and Defendant were driving around, they ran across Abby. Victim jumped out of the car and gave him a hug and a quick kiss. She then talked with Abby for about ten minutes. Defendant asked her whether Abby was her boyfriend. She repeatedly denied that Abby was anything more than an old friend she had not seen for a long time. Defendant again accused Victim of disrespecting him, yelled at her, and pulled her hair. He also punched her in the head several times.

After this incident, Defendant told Victim to get back in the car. Victim complied so she could cool things down. Defendant and Victim continued driving around for a while. They eventually stopped at Miller Park in University City, Missouri to talk. Their talk turned into an argument about Victim's interaction with Abby. The argument intensified. Then, Defendant ordered Victim to take her pants off. She refused. He reached over, grabbed her pants, and pulled them down and completely off. In response, Victim opened her car door and ran. After a short distance, Defendant caught her. He held her down and told her if she tried to run, "he would kill her." He then picked up a snow shovel that was lying nearby and hit Victim over the head with it eight or nine times.

He told her to "get in the car or I will kill you." She complied. He got in the car and drove away. Shortly thereafter, she realized her head was bleeding and she started to scream. He pulled over and told her, "quit screaming or I'll kill you." She jumped out of the car and ran to the nearest house. The home's occupant let her in. Defendant drove off.

After trial, the jury found Defendant guilty of first degree assault, armed criminal action, and felonious restraint. The trial court entered judgment on the jury's verdict and sentenced Defendant to consecutive prison terms of twenty, twenty, and ten years, respectively. Defendant appeals.

In his sole point relied on, Defendant contends the trial court erred in sustaining the prosecutor's objection to a portion of his closing argument:

> DEFENDANT'S ATTORNEY: She gets out of the car, as I said, okay. [Defendant] is upset too. We're not denying that fact. [Defendant] is upset and – and he goes out and he's trying to talk to her and she's struggling and whatever. So, yes, he goes in a rage, he sees a – a shovel and he picks it up.
>
> Now, I am not saying that this is going to be right for [Defendant] to do, no. It is completely wrong. I'm not saying that. I'm not here telling you that. But it is also not as [Victim] and the State would have you believe. This is not assault in the first degree, ladies and gentleman, not at all. [sic]
>
> First of all, the shovel's on the ground. There is no intent. There is no intent for [Defendant] to commit to – I'm sorry. There is no attempt for [Defendant] to kill or cause serious physical injury to [Victim]. And I will tell you several reasons why that is not assault in the first degree. Because there is no intent.
>
> He didn't bring a shovel along with him this whole night that they were out and say, Okay, I'm going to bring the shovel and beat her in the head. He didn't do that. He didn't bring a gun. He didn't bring a knife with him. He didn't plan anything. He got upset and went into a rage and he hit her. Wrong, but it happened.
>
> PROSECUTOR: Judge, I'm going to object. There's no evidence to

support that.

THE COURT: Sustain that objection.

DEFENDANT'S ATTORNEY: There's evidence – We know that they were arguing. We know he was upset. The witnesses told you he was upset. The witnesses told you he was raged (sic).

Now in terms of this shovel, the shovel was there. It was on some abandoned house, laying on the ground. He was sitting there trying to talk to her. He only picks the shovel up with one arm. She tells you that, okay. One arm. All right. And he's still – he's holding her down, according to her, with one arm and he's got the shovel in one arm, okay.

He didn't have two hands on the shovel and swing it as – I mean, it wasn't like he swung it like a bat.

After making additional arguments, Defendant's attorney concluded his closing by conceding that Defendant was guilty of second-degree assault, but asking the jury to find Defendant not guilty of first degree assault.

Defendant asserts sufficient evidence was adduced at trial to support his closing argument that he "got upset and went into a rage and he hit her." He further asserts the court's ruling prejudiced him in that it precluded him from raising his primary defense that he was guilty of second degree assault, not first degree assault, because he lacked the intent to kill or seriously injure Defendant.

Trial courts have broad discretion in controlling the scope of closing argument. State v. Barton, 936 S.W.2d 781, 783 (Mo. banc

1996). We will not reverse Defendant's conviction unless Defendant can demonstrate the trial court abused this discretion and the abuse prejudiced his case. <u>Id.</u> at 786; <u>State v. Brown</u>, 939 S.W.2d 882, 883 (Mo. banc 1997). It is an abuse of discretion for the trial court to prevent defense counsel from making a point essential to the defense that is justified by evidence and the reasonable inferences drawn therefrom. <u>Barton</u>, 936 S.W.2d at 784. To demonstrate prejudice, Defendant must show there is a reasonable probability that, in the absence of the abuse, the verdict would have been different. <u>Id.</u> at 786.

We find no abuse of discretion. First, the trial court did not prevent Defendant from arguing to the jury that he did not intend to kill or seriously injure Victim. After the court sustained the prosecutor's objection, defense counsel continued arguing that there was evidence that Defendant was upset and enraged. Further, defense counsel was permitted to make the following arguments: (1) Defendant did not plan ahead of time to assault Victim; (2) Defendant used a shovel, not a gun or knife; (3) Defendant swung the shovel with one hand only; and (4) Defendant could have killed or seriously injured Victim if he intended, but he did not intend to do so. Although the court may have precluded Defendant from arguing on one occasion that he was upset or enraged, the court did not prevent him from arguing it on other occasions or that he did not attempt to kill or seriously injure Victim. Because the trial court's ruling did not prevent Defendant from placing his primary defense – he was merely guilty of second-degree assault, not first-degree assault – before the jury, we find Defendant's case was not prejudiced. <u>See</u>, <u>State v. Treadway</u>, 558 S.W.2d 646, 650-651 (Mo. banc 1977).

Second, the trial court did not prevent defense counsel from making a point essential to the defense. Through his counsel's remark that he "got upset and went into a rage and he

hit [Victim]," Defendant was arguing that he was guilty of second-degree assault, in violation of Section 565.060.1(1), and that, therefore, he was not guilty of first degree assault, in violation of Section 565.050.[FN] Section 565.060.1(1) reduces the offense of first-degree assault to the offense of second-degree assault when the assailant is acting "under sudden passion arising out of adequate cause."[FN] However, Defendant did not request, nor did the trial court submit to the jury, a verdict director for second-degree assault based upon Section 565.060.1(1). The only verdict director for second-degree assault was based upon 565.060.1(2)[FN]. As such, defense counsel's statement addressed a factual question – whether Defendant was acting under sudden passion – which was not at issue in the case. Therefore, the trial court did not abuse its discretion by precluding the statement.

Third, there was no evidence Defendant was acting "under sudden passion" at the time he hit Victim with a shovel. As this court has explained, "[f]or an offense to be reduced to one less culpable, there must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason." State v. Scheets, 849 S.W.2d 637, 638 (Mo. App. E.D. 1993) (citations omitted), *quoting* State v. Simmons, 751 S.W.2d 85, 91 (Mo. App. E.D. 1988). Further, the passion must arise at the time of the offense and not be solely the result of former provocation. State v. Huff, 831 S.W.2d 752, 755 (Mo. App. E.D. 1992). "The offense must occur before there is any time for the passion to cool." Id.

Here, Defendant had ample time for his passion to cool. After he became upset about Victim's interactions with Mr. Thomas and Abby, he and Victim rode around for a while. Then, they stopped at Miller Park to talk. Only after having a conversation that devolved

into an argument did Defendant assault Victim by hitting her with a shovel. Thus, to the extent Defendant's assault upon Victim was triggered by rage, such rage was solely the result of provocations that occurred earlier in the evening. Because defense counsel inaccurately argued that Defendant's assault upon Victim occurred contemporaneously to Victim's alleged provocation of Defendant, we find the trial court did not abuse its discretion in sustaining the prosecutor's objection. Point denied.

The trial court's judgment is affirmed pursuant to Rule 30.25(b).

> [FN]Section 565.050 reads, in pertinent part: 1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. (footnote in original.)
>
> [FN]Section 565.060 reads, in pertinent part: 1. A person commits the crime of assault in the second degree if he:
> (1) Attempts to kill or knowingly causes or attempts to cause serous physical injury to another person under the influence of sudden passion arising out of adequate cause; or
> (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument. (footnote in original.)
>
> [FN]Instruction No. 8 read:
> If you find and believe from the evidence beyond a reasonable doubt:
> That between 10:00 p.m. Friday, October 8, 1999 and 2:00 a.m. Saturday, October 9, 1999, in the County of St. Louis, State of Missouri, the defendant knowingly caused or attempted to cause physical injury to Delisa Wimbley by means of a dangerous instrument by striking her with a shovel, then you will find the defendant guilty under Count II of assault in the second degree. (footnote in original.)

(Resp. Exh. E at 2-7.)

Section 2254(d)(1) requires federal habeas courts to test

the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

At the time petitioner's conviction became final, the law was clearly established that, in the absence of a denial of a benefit bestowed by a specific provision of the Bill of Rights, a defendant's right to due process is violated only if the defendant

was denied a fundamentally fair trial. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974); <u>Lisenba v. California</u>, 314 U.S. 219, 236 (1941). The test applied to determine whether error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the error not occurred. <u>Lisenba</u>, 314 U.S. at 236; <u>Hamilton v. Nix</u>, 809 F.2d 463, 470 (8th Cir. 1987).

In the case at bar, it cannot be said that the trial court's ruling sustaining the prosecutor's objection fatally infected the trial as to render it fundamentally unfair. First, as the Missouri Court of Appeals noted, even after the trial court's ruling, defense counsel continued unhindered to argue to the jury that the facts in evidence supported a finding that petitioner was upset and enraged during the attack upon Ms. Wimbley. Defense counsel also successfully made other arguments supporting a finding of second, not first, degree assault, including: (1) petitioner did not plan the attack ahead of time; (2) he used a shovel he found on the ground and not a gun or knife; (3) he swung the shovel with one hand only; and (4) he could have killed or seriously injured Ms. Wimbley had he intended to, but such intent was absent. As the Missouri Court of Appeals noted: "Although the court may have precluded Defendant from arguing on one occasion that he was upset or enraged, the court did not prevent him from arguing it on other occasions or that he did not attempt to kill or seriously injure Victim. Because the trial court's ruling did not prevent Defendant

from placing his primary defense – he was merely guilty of second-degree assault, not first-degree assault - before the jury, we find Defendant's case was not prejudiced."  (Resp. Exh. E at 5.)

Second, as the Missouri Court of Appeals noted, there was no evidence that petitioner was acting "under sudden passion" at the time of the offense.  As the court noted, under Missouri law, the "sudden passion" necessary to reduce an offense to one less culpable must be so extreme that for the moment, it replaces reason in directing the offender's actions.  State v. Scheets, 849 S.W.2d 637, 638 (Mo. Ct. App. 1993).  Furthermore, the passion must arise at the time of the offense, and not be solely the result of a former provocation.  State v. Huff, 831 S.W.2d 752, 755 (Mo. Ct. App. 1992).  "The offense must occur before there is any time for the passion to cool."  Id.  The court went on to note that, on the night in question, there was ample time for petitioner's passion to cool.  After he became upset about Ms. Wimbley's interactions with the two men, he and Ms. Wimbley rode around in her car for a while, and it was only after a conversation escalated into an argument that petitioner assaulted Ms. Wimbley with a shovel.  Thus, the court noted, to the extent petitioner's actions were triggered by rage, "such rage was solely the result of provocations that occurred earlier in the evening."  (Resp. Exh. E at 7.)

In light of the above, the undersigned cannot say that there exists a reasonable probability that the jury's verdict might have been different had the trial court not sustained the

prosecutor's objection.  See Donnelly, 416 U.S. at 643-45.  Not only did defense counsel continue to make the argument in question, she successfully made several other arguments supporting a finding of second, not first, degree assault.  Furthermore, as the state court noted, there was no evidence in the record that would tend to support a finding of a state of mind consistent with second degree assault.  The Missouri court's decision denying petitioner relief on this claim is well based on law and fact.  This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner provided the Court with any such law.  As such, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," such clearly established federal law.  28 U.S.C. § 2254(d)(1).  Neither has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As such, petitioner's claim in Ground 4 of the instant petition should be denied.  28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that petitioner Nicholas Smith's petition for writ of habeas corpus (Docket Nos. 1-1 and 4) be

dismissed without further proceedings.

The parties are advised that they have until March 19, 2007, to file written objections. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 257 (8th Cir. 1990).

UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of March, 2007.